UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL E. RICHHART, | ) |
| Plaintiff, | ) |
| | ) CAUSE NO. 1:10-cv-702-JMS-MJD |
| v. | ) |
| MICHAEL J. ASTRUE | ) |
| Commissioner of Social Security, | ) |
| Defendant. | ) |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Michael Richhart applied for Disability Insurance Benefits and Supplemental Social Security Income ("disability benefits") on September 5, 2006, alleging disability beginning October 10, 2000. [Dkt. 16-3 at 7.] Defendant Michael J. Astrue, the Commissioner of the Social Security Administration (the "Commissioner"), denied Mr. Richhart's application both initially and after reconsideration. [*Id*.] An Administrative Law Judge ("ALJ") held a hearing on August 11, 2009, and ultimately found Mr. Richhart not disabled. [*Id*. at 7-13.] The Appeals Council denied review of the ALJ's decision. Mr. Richhart now requests review of the ALJ's decision under 42 U.S.C. § 405(g).[1]

**I.**
**BACKGROUND**

Mr. Richhart was 50 years old at his date last insured. [Dkt. 16-3 at 9.] He was a high school graduate with 23 years of past work experience as a machinist. [Dkt. 16-2 at 10.] Mr. Richhart alleges he became disabled on October 10, 2000, due to a seizure disorder. [Dkt. 16-3 at 7.]

---

[1] Mr. Richhart was previously denied benefits in September 2004. [Dkt. 16-3 at 7.]

### A) Medical Evidence[2]

In September 2000, Dr. Stirling began treating Mr. Richhart for seizures. [Dkt. 16-7 at 4.] The next year, Dr. Stirling diagnosed grand mal seizures, chronic alcoholism, alcoholic hepatitis, and peripheral neuropathy. [*Id.*] In July 2003, Dr. Stirling prescribed Dilatin and Atenolol to treat his seizures. [*Id.*]

Mr. Richhart next saw Dr. Stirling in May 2007. [*Id*. at 44.] In a report dated August 7, 2007, Dr. Stirling stated that Mr. Richhart was treated for many years for grand mal seizures and chronic anxiety that existed since October 9, 2000, "with several significant episodes since that date." [*Id*. at 47.] Dr. Stirling opined that Mr. Richhart's condition was to last at least twelve months and interfered with Mr. Richhart's life functions and ability to perform light or sedentary work. [*Id.*] Presumably because she had not seen Mr. Richhart from 2004 to May 2007, Dr. Stirling provided no detail about "significant episodes" of seizure activity in that time frame or the particulars of any life functions that were affected by the seizure disorder..

In addition to Dr Stirling's opinion, two state agency reviewing physicians offered medical opinions. Dr. Dobson opined in 2007 that there was insufficient evidence of a medical condition to support a finding of a severe impairment at that time, and that Mr. Richhart's last seizure was in 2004. [Dkt. 16-7 at 11.] Also in 2007, Dr. Neal affirmed Dr. Dobson's opinion as written. [*Id*. at 43.]

---

[2] Because Mr. Richhart was previously denied benefits on September 21, 2004, [dkt. 16-3 at 7], the ALJ addressed the merits of the un-adjudicated period between that date and December 31, 2006, Mr. Richhart's date last insured. [Dkt. 16-3 at. 7-8, 13]; *see also* 20 C.F.R. 404.957(c)(1). The Court does the same, and considers episodes outside the relevant period only insofar as they provide background and context for the full picture of Mr. Richhart's health during the relevant time period.

### B) Mr. Richhart's Testimony

Mr. Richhart claimed he could not stand for longer than a few hours at a time because he would get light-headed and lose his balance. [Dkt. 16-2 at 18-20.] During these episodes, Mr. Richhart testified, he had memory loss and could not concentrate; he generally needed to sit down for about an hour and-a-half before resuming what he had been doing. [*Id*. at 13.] During his most recent episode, Mr. Richhart testified that he was washing windows and grew pale, light-headed, and had to sit down 90 minutes before eventually finishing the job. [*Id*.] Mr. Richhart testified that he did not seek medical attention for any of his minor episodes. [*Id*. at 12.]

According to Mr. Richhart, he could mow the lawn for two hours before feelings of lightheadedness set in. [Dkt. 16-2 at 16.] He further stated he could lift 35 pounds or more, but that repeated strenuous activity made his symptoms worse. [*Id*. at 19-20.] He also acknowledged that he could sit continuously for a few hours. [*Id*. at 19]

### C) Witness Testimony

Gaylene Ann Reed, Mr. Richhart's girlfriend, stated that Mr. Richhart had difficulty maintaining his balance for long periods of time; difficulties with memory and concentration; and that she witnessed Mr. Richhart have a seizure in June 2008 when he exerted himself. [Dkt. 16-6. at 36.] Amber Groce, Ms. Reed's sister, stated that Mr. Richhart was on a ladder cleaning the windows of her business when his face grew pale. [*Id*. at 37.] She reported that when he came down from the ladder, he was dizzy, rested for about an hour, and then finished the job. [*Id*.]

# II.
## STANDARD OF REVIEW

This Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's (and ultimately the Commissioner's) findings. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determinations "considerable deference," overturning them only if they are "patently wrong," *Prochaska v. Barnhart*, 454 F. 3d 731, 738 (7th Cir. 2006).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denials of benefits. Otherwise the Court will remand the matter back to the Social Security Administration for further consideration; only in rare cases can the Court actually order an award or benefits. *See Briscoe v. Barnhart*, 425 F. 3d 345, 355 (7th Cir. 2005).

> When evaluating a disability claim, an ALJ must use the following five-step inquiry: (1) [is] the claimant...currently employed, (2) [does] the claimant have] a severe impairment, (3) [is] the claimant's impairment...one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment,...can she perform her past relevant work, and (5) is the claimant...capable of performing any work in the national economy.

*Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). To properly perform the analysis at Steps Four and Five, the ALJ must first find the disability claimant's residual functional capacity ("RFC"), or "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 416.945(a).

## III.
### THE ALJ'S OPINION

At step one of his analysis, the ALJ found that Mr. Richhart had not engaged in substantial gainful activity during the relevant period. [Dkt. 16-3 at 9.] At step two, the ALJ found that Mr. Richhart had a seizure disorder, but at step three the ALJ found that no impairment or combination of impairments medically equaled any of the listed impairments. [*Id.* at 9-10.] In so finding, he determined that Mr. Richhart was not credible regarding the limiting effects of his symptoms. At step four, the ALJ found that Mr. Richhart had the RFC to perform work at all exertional levels, but he was precluded from doing work where he would be at risk of harm if he suffered a seizure on the job, including work involving unprotected heights, large bodies of water, exposure to gas or flames, moving machinery, and automotive equipment. [*Id.* at 10.] Given this RFC, the ALJ used the medical-vocational guidelines rule 204.00 to determine there were jobs in the national economy Mr. Richhart could perform, and concluded that Mr. Richhart was not disabled. [*Id.* at 11.]

## IV.
### DISCUSSION

Mr. Richhart argues that the ALJ erred by erroneously relying on the "grid" and failing to call a vocational expert to testify regarding his vocational limitations; by failing to develop the medical record and wrongly relying on the opinions of non-treating physicians; and by making an incorrect credibility determination. [Dkt. 36 at 6-14.]

**A) ALJ's Use of the Medical Vocational Rules**

The ALJ found that Mr. Richhart had the residual functional capacity to perform work at all exertional levels; however, he was specifically precluded from work involving unprotected heights, large bodies of water, exposure to gas or flames, moving machinery, and automotive

5

equipment. [Dkt. 16-3 at 10.]   Despite those limitations, he relied on the medical-vocational rules (the "grid")[3] to find Mr. Richhart capable of working in the national economy. [*Id.* at 12-13.]  Mr. Richhart challenges the use of the grid in the face of such nonexertional limitations. Instead, he argues, the ALJ should have called a vocational expert to testify regarding Mr. Richhart's limitations. [Dkt. 36 at 6.]

Generally, an ALJ may use the grid when there is evidence sufficient to "persuade a reasonable person that the limitations in question do not significantly diminish the employment opportunities otherwise available." *Clark v. Sullivan*, 891 F.2d at 175, 179 (7th Cir. 1989).  But an ALJ may not rely solely on the grid when a claimant has a nonexertional limitation that "might substantially reduce a range of work an individual can perform. *Lippart v. Barnhart*, 63 Fed. Appx. 260, 266 (7th Cir. 2003.)   Social Security Regulation 85-15 offers significant guidance on the effect of the limitations discussed here:  "A person with a seizure disorder who is restricted only from being on unprotected elevations and near dangerous moving machinery is an example of someone whose environmental restriction does not have a significant effect on work that exists at all exertional levels."

The applicable regulation explicitly states that two of the limitations imposed here do not foreclose reliance on the grid: unprotected heights and moving machinery.  The other three limitations found by the ALJ, work involving large bodies of water, exposure to gas or flames, and automotive machinery, fall within the scope of the explicit examples provided for by the regulation.  The regulation describes these types of environmental limitations as not having a

---

[3] The grid is a chart that classifies a claimant as disabled or not, based on the claimant's residual functional capacity, which is based on strength, age, prior work experience, and education.  It specifically provides for the case where the individual has nonexertional complaints by requiring that the ALJ consider the nonexertional impairment to see if the individual's work capacity is further diminished than the grid otherwise would indicate.  20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00 (e)(2).

significant effect on work existing in the national economy. Given its guidance, and applying the standard articulated in *Clark,* a reasonable person could be persuaded that Mr. Richhart's limitations do not significantly diminish the employment opportunities otherwise available. The Court therefore finds that the ALJ did not err by using the grid to determine that Mr. Richhart could work in the national economy.[4]

### B) Medical Record

#### 1. Developing the Record

Mr. Richhart also argues the ALJ failed to develop the record adequately when he rejected the opinion of treating physician, Dr. Stirling, without attempting to resolve any inconsistencies between the doctor's opinion and the treatment records regarding the severity of Mr. Richhart's seizure episodes, particularly in light of Dr. Stirling's opinion that Mr. Richhart had experienced "significant" seizure episodes. [Dkt. 36 at 8-9.]

While a claimant bears the burden of proving disability, the ALJ in a Social Security hearing has a duty to develop a full and fair record. *Nelms v. Astrue*, 553 F. 3d 1093, 1098 (7th Cir. 2009). This duty is enhanced when a claimant appears without counsel; then the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Id.* (*quoting Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991)). But the Court generally "upholds the reasoned judgment of the [ALJ] concerning how much evidence to gather." *Id*. "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." *Id.* This is particularly true where, as here, a claimant is represented by counsel at the hearing—where the claimant has counsel, the ALJ is free to assume

---

[4] In his reply brief, Mr. Richhart argues for the first time that he is limited in his ability to travel to work because of his seizure disorder. [Dkt. 49 at 369,70.] Arguments raised for the first time in a reply brief are waived. Fed. R. App. P. 28; 7th Cir. Rule 28 (f). The Court will therefore not consider this argument.

7

that a claimant presented his strongest claim for benefits at that the hearing. *Skinner v. Astrue,* 478 F. 3d 836, 842 (7th Cir. 2007). Consequently, to prevail on this argument, "a claimant must set forth specific, relevant facts—[namely], medical evidence—that the administrative law judge did not consider." *Nelms,* 553 F.3d 1093 at 1098.

Here, Mr. Richhart was represented by counsel at the hearing. At that time, he did not request that the ALJ further develop the record, nor does he suggest now that there is any medical evidence that the ALJ failed to consider. Mr. Richhart failed to come forth with evidence of treatment for any significant seizure episodes after 2004. Thus, for the relevant time period; there was, and is, no evidence to support Dr. Stirling's conclusion.[5] [Dkt. 16-3 at 11.]

The Court therefore finds no reason that it should not uphold the reasoned judgment of the ALJ in basing his determination on the applicable evidence in existence. Mr. Richhart failed to set forth specific medical documentation from the relevant time period, or, at the least, to argue that such medical documents exist—that is his burden, not the ALJ's. *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) ("It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove [his] claim of disability."). Mr. Richhart simply did not meet his burden here. The Court therefore finds that the ALJ did not err by relying on Mr. Richhart's presentation of the evidence.

**2. The ALJ's Consideration of Medical Source Opinions**

Plaintiff next argues that the ALJ erred in making an RFC determination that did not coincide with the treating physician's opinion. [Dkt. 16-3 at 11.]

---

[5] As discussed later, it's entirely possible the Dr. Stirling was referring to the pre-2004 seizures when she reported significant episodes since 2000. But Mr. Richhart was already denied benefits on the basis of that record, and cannot bootstrap a claim for later benefits via such a vague reference.

The opinion of a treating physician is given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic testing and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2) and § 416.927(d)(2); *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001). But an ALJ need not defer to unsupported opinions. *See Denton v. Astrue,* 596 F. 3d 419, 424 (7th Cir. 2010). If the ALJ concludes that the treating physician's opinion is inconsistent with other evidence, he must simply articulate and explain the inconsistency. *Giles v. Astrue,* 483 F. 3d 483, 488 (7th Cir. 2007).

When an ALJ chooses not to give the treating physician's opinion controlling weight, the ALJ must then go on to determine what weight to give to the opinion using the factors listed in § 404.1527(d)(2), including length, nature and extent of the treatment relationship, the frequency of examination, the physicians specialty, and the types of diagnostic tests performed. *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010).

Here, Dr. Stirling opined that Mr. Richhart had experienced seizures and chronic anxiety since at least October 9, 2000, with several significant episodes occurring since that date. [Dkt. 16-7 at 47.] Dr. Stirling provided no chronology of these episodes, and the inescapable conclusion from the record is that there had been no significant episodes since 2004. The ALJ gave Dr. Stirling's opinion little weight, justifying his decision based on the infrequency of Mr. Richhart's visits to Dr. Stirling and lack of medical evidence of Mr. Richhart's condition or related treatment during the time period under review. The ALJ determined that the medical evidence of record is devoid of treatment records, progress notes, diagnostic tests, and medication logs regarding significant episodes of seizures during the period between September 21, 2004 and May 2007. [Dkt. 16-3 at 11.] Ultimately, the ALJ found that there was no documentation in the record to support Dr. Stirling's opinion. [*Id.*]

9

After a review of the record, it is clear that Dr. Stirling presented no explanation of the extent of Mr. Richhart's medical limitations and did not support her findings with clinical or laboratory diagnostic testing. Dr. Stirling merely offered a vague conclusion about Mr. Richhart's medical condition and ability to perform sedentary and light work. [Dkt. 16-7 at 47.] Her statements are inconsistent with the medical evidence of record—or lack thereof—because there was at least a three-year span during which there is no evidence of medical treatment or diagnosis for Mr. Richhart's seizure disorder. Because the limitations Dr. Stirling articulated are unsupported and inconsistent with the record, and because the ALJ explained these inconsistencies, the Court finds that the ALJ did not err by giving little weight to Dr. Stirling's opinion.

Mr. Richhart further argues that the ALJ's reliance upon the non-examining State Agency physicians is inconsistent with his conclusion that Mr. Richhart has a seizure disorder that currently limits his functional abilities. Because the ALJ allegedly only considered these medical opinions, Mr. Richhart argues, the only explanation for his findings is that the ALJ impermissibly made a medical determination squarely within the purview of the doctors.

The Seventh Circuit has held that the ALJ may not make medical determinations. *See Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). Here, the State Agency physicians determined that there is insufficient evidence in the record to support a finding of disability: Dr. Dobson, indicated that medical evidence had not been received and that the record contained only a third-party statement that Mr. Richhart was taking Dilantin and his last seizure was in 2004, [Dkt. 16-7 at 11]; Dr. Neal reviewed the evidence in Mr. Richhart's file and affirmed Dr. Dobson's opinion as written. [*Id.* at 43.]

The ALJ claimed to have afforded substantial weight to their opinions because they were consistent with the relevant medical evidence of record—or, more accurately, the lack thereof—as a whole. [Dkt. 16-3 at 11.] But he nevertheless concluded that Mr. Richhart had a seizure disorder.

Although the ALJ afforded the State Agency physicians' opinions more weight than Dr. Stirling's, the ALJ did not "play doctor." The medical evidence presented supports the ALJ's conclusion that Mr. Richhart had a seizure disorder, that was more symptomatic in the past, but that treatment had either eliminated or lessened its symptoms. [Dkt. 16-7 at 12-42.] Accordingly, the ALJ's determination that Mr. Richhart had a seizure disorder was based on his own opinion, but on substantial evidence in the record.[6] The Court therefore finds Mr. Richhart's argument that the ALJ made impermissible medical determinations unavailing.

**C) Credibility Assessment**

Finally, Mr. Richhart contends that the ALJ erred by concluding that he was not credible. [Dkt. 36 at 11-14.] Specifically, he argues, the ALJ should have given more weight to Mr. Richhart's testimony and to the letters submitted by Gaylene Ann Reed and Amber Groce. [*Id* at 13.]

The ALJ's credibility determination is entitled to special deference. *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004); *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying.") Although the absence of objective evidence

---

[6] Even if the ALJ had impermissibly substituted his opinion for the opinions properly within the scope of medical professionals, the ALJ's error would have benefited Mr. Richhart; the ALJ ultimately included more restrictions in his RFC determination than Mr. Richhart argues the State Agency physicians' opinions warranted. Consequently, such an error would have been harmless and thus not grounds for remand. *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006).

cannot, standing alone, discredit the presence of substantive complaints, *Parker v. Astrue*, 597 F.3d 920, 922-23 (7th Cir. 2010), when faced with evidence both supporting and detracting from claimant's allegations, the Seventh Circuit has recognized that "the resolution of competing arguments based on the record is for the ALJ, not the court." *Donahue v. Barnhart*, 279 F.3d 441, 444 (7th Cir. 2002). Consistent with Seventh Circuit authority, this Court will not disturb a credibility finding "unless it is 'patently wrong in view of the cold record.'" *Pope v. Shalala*, 998 F.2d 473, 487 (7th Cir. 1993) ("[Because] the ALJ is in the best position to observe witnesses, [courts] usually do not upset credibility determinations on appeal so long as they find some support in the record and are not "patently wrong.")

When evaluating the credibility of an individual's statements, the ALJ must consider the entire case record and give specific reasons for the weight given to the individual's statements. SSR 96-7p. Under Social Security Ruling 96-7p, the ALJ must assess the following minimum factors:

> When making a credibility analysis the court must assess: (1) The individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and (6) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*See* SSR 96-7p.

Here, the ALJ found that Mr. Richhart's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent they were inconsistent with the residual functional capacity assessment.[7] [Dkt. 16-3 at 11.] In making this determination,

---

[7] The Court is mindful, as the ALJ should be, that the Seventh Circuit condemns this kind of "meaningless boilerplate." *Parker v. Astrue*, 597 F.3d 920, 921-22 (7th Cir. 2010); *see also Punzio v. Astrue*, 630 F.3d 704, 709 (7th Cir. 2011) ("To read the ALJ's boilerplate credibility

12

the ALJ reviewed Mr. Richhart's testimony against the backdrop of the factors articulated in SSR 96-7p. [*Id.* at. 10-11.] Specifically, the ALJ evaluated the activities Mr. Richhart admitted he was capable of doing, such as: standing for a few hours at a time, mowing his lawn for a few hours before feelings of lightheadedness set in, lifting 35 pounds or more, and sitting continuously for a few hours at a time. [Dkt. 16-2 at 12-19.] The ALJ also noted the severity of the symptoms to which Mr. Richhart testified, including light headedness, black-outs, dizziness, and shortness of breath. [*Id.* at 11.] Likewise, the ALJ explained Mr. Richhart had not received treatment during the relevant time period for his seizure disorder or resulting limitations. [*Id.* at 11]; *see also* SSR 96-7p.

In light of the ALJ's consideration of the appropriate factors, the Court cannot find that his credibility determination was "patently wrong in view of the cold record," when there was nothing in the cold record to the contrary. *Pope v.* 998 F.2d at 487.

Mr. Richhart also argues that the ALJ gave no reason for rejecting the lay witness testimony—specifically, the testimony that Mr. Richhart's lightheadedness and dizziness with exertion required periods of rest. [Dkt. 36. at 13.] Indeed the ALJ afforded little weight to the letters submitted by Gaylene Ann Reed and Amber Groce, referencing Mr. Richhart's latest medical episode. [Dkt. 16-3 at 11.]

The ALJ, however, explained his reasoning. He noted that Mr. Richhart's refusal to seek medical care reflected that the episode of lightheadedness and dizziness was not severe enough to amount to a seizure. [Dkt. 16-3 at 11.] His ability to return to work after taking a short break reinforces this fact. [*Id.*]

---

assessment is enough to know that it is inadequate and not supported by substantial evidence. That is reason enough for us to reverse the judgment.")

Despite the ALJ's unfavorable credibility assessment, however, he ultimately limited Mr. Richhart to jobs where he would not be at risk of harm if he had a seizure. [Dkt. 16-3 at 10.] As such, any error the ALJ might have made in his credibility assessment was harmless, and as such, was not grounds for remand. *Barnhart*, 454 F.3d at 738.

## V.
### CONCLUSION

The standard for disability claims under the Social Security Act is stringent. Even claimants with substantial impairments are not necessarily entitled to benefits. *Williams-Overstreet v. Astrue*, 2010 U.S. App. LEXIS 2604, *5 (7th Cir. 2010) (per curiam). Furthermore, the standard of review of the Commissioner's denial of benefits is narrow. *Id.* Taken together, the Court can find no legal basis to overturn the Commissioner's decision that Mr. Richhart does not qualify for disability benefits. Therefore, the decision below is **AFFIRMED**. Final judgment will be entered accordingly.

07/20/2011

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Jeannine LaPlace
LAW OFFICES OF HARRY J. BINDER & CHARLES E. BINDER, P.C.
fedcourt@binderandbinder.com

Eddy Pierre Pierre
LAW OFFICES OF HARRY J. BINDER AND CHARLES E. BINKER, P.C.
fedcourt@binderandbinder.com